## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| JACQUELINE CRAIG, Individually and on BEHALF OF MINORS J.H., K.H., AND A.C., and BREA HYMOND, Individually **Plaintiffs,** | §<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:17-cv-1020 |
| **v.** | §<br>§<br>§ | **JURY TRIAL DEMANDED** |
| CITY OF FORT WORTH, TEXAS, WILLIAM D. MARTIN, and ITAMAR VARDI, **Defendants** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

NOW COMES Jacqueline Craig, plaintiff, Individually and as next friend of her minor daughters J.H. and K.H. and her minor son A.C., and Brea Hymond, Individually, Plaintiffs, complaining of Defendants City of Fort Worth, Texas (the "City"), William D. Martin in his individual and official capacity, as a Fort Worth police officer, and Itamar Vardi and for cause would show the Honorable Court as follows:

## NATURE OF THE ACTION

1.     This is an action brought by the Plaintiffs against the City of Fort Worth, Texas and Officer William Martin for his use of excessive force, suppression of free speech, unlawful

arrest and unlawful detention under the color of law in violation of Plaintiffs' individual rights under the First, Fourth and Fourteenth Amendment of the United States Constitution and in violation of their civil rights pursuant to 42 U.S.C. § 1983.

2.      Plaintiffs allege that the City of Fort Worth, Texas, Mayor Betsy Price ("Price"), Chief of Police Joel Fitzgerald ("Fitzgerald") and the Fort Worth City Council (collectively referred herein as the "Policymakers") failed to properly supervise and/or discipline officers who are known, or who should have been known, to engage in the use of excessive force, including those officers repeatedly accused of such acts.   Mayor Price, along with Chief of Police Fitzgerald had a duty, but failed to implement and/or enforce policies, practices and procedures for the Fort Worth Police Department that respected Plaintiffs' constitutional rights.   Defendant Martin consciously disregarded the rights of Plaintiffs, knowing that the Policymakers would approve and/or ratify his actions.   Chief Fitzgerald ratified Defendant Martin's actions by failing to implement the appropriate disciplinary measure of immediate termination of Officer Martin, failing to refer the appropriate criminal charges in the matter to the District Attorney's office, offering Martin a promotion in exchange for his cooperation with minimal disciplinary actions, making public misrepresentations about Martin's history of misuse of force, retaliating against members of his command staff that disagreed with the lack of proper punishment, and attempting to minimize Martin's misconduct by returning him to duty in the same community where he violated plaintiffs. For these civil rights violations and other causes of action discussed herein, Plaintiffs seek answers and compensation for their damages and the wrongful detention of Jacqueline Craig, J.H., K.H., A.C., and Brea Hymond.

3. Plaintiffs also bring claims of assault and battery against defendant, Itamar Vardi,

arising from the same set of facts and circumstances from which the claims against the remaining defendants arise.

## **PARTIES**

4.     Plaintiff Jacqueline Craig is a citizen of the United States and a resident of Fort Worth, Texas.   Jacqueline Craig sues on behalf of herself and as next friend of her minor children, A.C., J.H. and K.H., all individuals who at all times mentioned resided in Tarrant County, Texas.

5.     Plaintiff Brea Hymond is a citizen of the United States and a resident of Fort Worth, Texas.   Brea Hymond is an individual who at all times mentioned resided in Tarrant County, Texas.

6.     Defendant, the City of Fort Worth ("Defendant City"), is and was at all relevant times mentioned, a municipality duly organized and existing under the laws of Texas.   Defendant City's Police Department, Fort Worth Police Department ("FWPD"), is an official subdivision of Defendant City, and all officers employed by the FWPD are employees of Defendant City.

7.     Defendant City was at all times mentioned engaged in owning, operating, maintaining, managing and doing business as FWPD, and in the business of public safety for the residents of Fort Worth, Tarrant County.   All of the acts complained of in this Complaint by Plaintiffs against Defendant Martin were done and performed by him individually and/or in his capacity agent, servant and/or employee, and at all relevant times was acting under the color of law. Moreover, the City ratified all of the acts of Defendant Martin for which this complaint is made.

8.     The City of Fort Worth operates the Fort Worth Police Department ("FWPD").

The City of Fort Worth funds and operates the FWPD, which, along with the Fort Worth City Council, the Fort Worth City Manager, Fort Worth Mayor Price and Chief Fitzgerald are responsible for the implementation of the police department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit. The FWPD is also responsible for preventive, investigative, and enforcement services for all citizens of The City of Fort Worth.

9.      The City of Fort Worth may be served with citation herein by and through its agent for service of process, Mary J. Kayser, City Secretary, at 200 Texas St., Fort Worth, Texas 76102, or wherever she may be found.

10.      Defendant William Martin, upon information and belief, is a resident of Fort Worth, Texas.  At all relevant times, this Defendant was acting under color of law, that is, under the color of the statutes, ordinances, regulations, policies, customs and usages of Defendant City. Martin is being sued in his individual and official capacity as an employee of the Fort Worth Police Department.   Martin may be served at the Fort Worth Police Department at 5650 E. Lancaster Ave., Fort Worth, TX 76112 or wherever he may be found.

11.      Defendant, Itamar Vardi, upon information and belief, is a resident of Fort Worth, Texas. Itamar Vardi is an individual who at all times mentioned resided in Tarrant County, Texas. Vardi may be served at 7417 Rock Garden Trail, Fort Worth, Texas 76123 or wherever he may be found.

**JURISDICTION AND VENUE**

12.     Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth Amendment of the United States Constitution and 42 U.S.C. §1983, to redress the deprivation of rights, privileges and immunities guaranteed to Plaintiffs by constitutional and statutory provisions.   Plaintiffs further invoke the supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Texas.

13.     Venue is appropriate in the United States District Court; Northern District of Texas, Fort Worth Division, since Tarrant County is the location of the events made the basis of this cause of action.

14.     Plaintiffs timely filed a notice of claim with the City on or about March 25, 2017.

**STATE ACTION**

15.     To the extent applicable, Defendant Martin was acting under color of state law when he subjected Plaintiffs to the wrongs and injuries hereinafter set forth.

16.     Defendant, Itamar Vardi, committed the tort of assault and battery in injuring A.C.

**FACTUAL ALLEGATIONS**

17.     On December 21, 2016, at approximately 3:30 PM, Plaintiff A.C., then eight-years-old, was walking home from his school bus stop (located near the intersection of Valley Village Drive and Grass Valley Trail Fort Worth, Texas 76123) with his older sister, L.C., a minor.   As they walked east on Valley Village Drive toward their home, A.C. dropped some raisins along the walkway from a bag of mixed snacks.   At or about the previously mentioned timed and place, Defendant, Itamar Vardi, observed A.C. dropping the raisins near his home.

Defendant Vardi approached A.C. and demanded he retrieve the discarded raisins from the walkway. When A.C. refused, Vardi grabbed A.C. by the arm and repeated his command. When A.C. attempted to pull free from Vardi's hold, Vardi intentionally grabbed the minor by the back of his neck causing injury and violently pushed him to the ground pinning him to the concrete near the location on the sidewalk where the raisins had fallen. Vardi's assault caused A.C. to suffer a cervical sprain to his upper spine. During the attack, L.C. shouted for Vardi to release her brother from this hold before running to her nearby home on Rock Garden Trail to tell her mother about the assault. A.C. managed to struggle free from Vardi's grasp and run home as well.

18.     Upon learning about the assault on her son, Plaintiff, Jacqueline Craig, immediately left her home and approached Defendant, Vardi. Vardi admitted to assaulting her son, stating A.C. had "defied [him]" when commanded to pick up the raisins from the ground. Craig then called law enforcement to report Vardi's assault on her son. Craig waited for law enforcement to arrive with several members of her household, including her daughter, then nineteen-year-old, Plaintiff Brea Hymond who began recording the encounter. While waiting for law enforcement to arrive, Jacqueline Craig can be seen in the recording preventing another man from confronting Vardi. She reassured the man that she had contacted police and asked that he allow law enforcement to deal with the assault on her son.

19.     The City of Fort Worth dispatched Defendant Martin to Craig's disturbance call. Prior to arriving, for unknown reasons Defendant Martin ran a background check on Plaintiff Craig based on information she provided in her 911 call and discovered outstanding Class-C misdemeanor warrants. When Defendant Martin arrived to the location of the incident, he spoke

with Vardi briefly.  According to Martin's report, Vardi admitted to committing felony assault on the minor stating he "approached the child and grabbed his arm and told him to pick up the trash."  When the child refused, Vardi admitted that he grabbed the child by the back of the neck and demanded that the child pick up the trash.

20.     Defendant Martin then turned his attention to Craig who explained that Vardi had assaulted her son.   To that, Martin responded, "Why don't you teach your son not to litter?" Plaintiff Craig answered that even if he did litter that did not give a stranger the right to grab or choke her son.  Martin responded "Why not?"  Craig, upset by this response, stated, "Because it doesn't!"  Defendant Martin informed Craig that if she continued to yell at him she would "piss [him] off and then [he would] take [her] to jail."

21.     Following this statement, fifteen-year-old J.H. turned to her mother with her back to Martin and attempted to end the encounter.   Without any explanation or justification, Defendant Martin grabbed J.H. from behind and shoved her to the side.  Defendant Martin then grabbed Plaintiff Craig and threw her to the ground, drawing his Taser gun and shoving it into her back while she lay prostrate on the ground.

22.     Defendant Martin then violently grabbed Plaintiff Craig's right arm and pulled it behind her back while pointing the Taser gun at K.H. and instructing her to get down on the ground.   As J.H. complied, Martin placed Craig in handcuffs while she lay face down in the street.   He then approached J.H., who was lying on the ground as instructed, and straddled the top of her while grabbing the back of her neck and forcing her head to the concrete.  Without any explanation or justification, Defendant Officer Martin placed J.H. in handcuffs and lifted her from the ground by yanking her arms.

23.     Defendant Martin then walked Craig and J.H. to his squad car.   Without any justification or explanation, Defendant Martin placed J.H. in the back of his car, where she had difficulty maneuvering into the vehicle with her hands cuffed behind her back.   Defendant Martin grew impatient and shouted "Get in the car!" while kicking J.H.'s legs into the vehicle and slamming the door.   Defendant Martin also placed Craig in the vehicle on the opposite side of J.H.

24.     Plaintiff, K.H., witnessing the assault on her mother and sister, attempted to intervene by placing herself in the path of defendant, Martin in an attempt to block him from any further assault on members of her family. Defendant, Martin, in turn unlawfully struck then fourteen year-old plaintiff, K.H., in the throat.

25.     At all relevant times hereto, Plaintiff, Brea Hymond, stood at a safe distance away from defendant, Martin, and, without interfering with the unlawful arrest, recorded the assault using her cellular device.

26.     Defendant Martin then, suddenly and without provocation, rushed Plaintiff Brea Hymond, who stood at a safe distance, recording the arrest.   Martin handcuffed Hymond's arms behind her back and questioned her about her age.   When she failed to respond suitably, Martin hyper-extended her handcuffed arms by flexing them above her head in a pain-compliance maneuver, which he later described as consistent with the training and procedures he learned at the Fort Worth Police Academy.   When other officers arrived, Plaintiff Hymond was placed in the back of a police vehicle.

27.     Plaintiffs Craig, Hymond and J.H. were taken into police custody.   Plaintiff, Craig was charged with failure to ID - fugitive from justice (although she is heard providing

proper ID in the recordings available) and resisting arrest (despite the lack of evidence that she resisted at any time).   Plaintiff Hymond was unlawfully charged with interference with a peace officer and resisting arrest for her actions in recording the attack.   K.H. was transferred to a juvenile detention center where she was later released without being charged with any crime.

28.     Defendant Officer Martin has a history of misuse of force against African Americans.   On August 6, 2013, Martin violated the department's use of force policy by firing his taser at two fleeing African American males at Dunbar High School.   In his report on the incident, Captain Edwin Kraus stated, "Officer[s] [have] to know that suspect is armed to qualify to use taser under [the circumstances]."   In his report, Captain Kraus also asserts that Martin has a history of misuse of force that should be considered when evaluating his behavior in the 2013 incident.

29.     Despite all warning, the City of Fort Worth and the Fort Worth Police Department repeatedly ratified Defendant Martin's behavior and failed to punish and/or adequate supervise Defendant Martin for his past abusive behavior.   For the incident at bar, Defendant Martin once again escaped proper punishment, receiving just a ten-day suspension and remaining qualified for promotion within the department.

30.     Fort Worth Police Department's Internal Affairs Unit concluded that Martin was guilty of excessive force in the arrest of Brea Hymond. However, defendant FWPD failed to acknowledge or properly punish defendant, Martin, for the unjustified and improper arrest of defendant, Craig, J.H., K.H., or Brea Hymond, thereby ratifying his behavior.

31.     Defendant, FWPD, further ratified defendant, Martin's behavior by only administering a minor punishment of a 10-day suspension, while conversely, implementing the

severe punishment of demotion and suspension without pay for superior officers Deputy Chief Abdul Pridgen and Vance Keyes for allegedly leaking the body cam footage to the public (although this punishment was later overturned by the Civil Service Commission).

32.     Plaintiffs were unreasonably detained and falsely imprisoned for an unreasonable period of time without freedom to move.

33.     Defendant, Martin, refused to provide Plaintiffs with any explanation for their unlawful detention, and although unlawfully detained, Plaintiff J.H. was never charged.

34.     On information and belief, Defendant Martin, the City and its policymaker acted with deliberate indifference and/or reckless disregard toward Plaintiffs' rights, targeting them for unlawful search and seizure, unlawful assault, and unlawful detention without any reasonable factual basis to support that Plaintiffs had committed any crime in responding to an adult male attack on their minor family member. Moreover, Defendant Martin failed to adequately investigate the assault of minor plaintiff, A.C., by defendant, Vardi, disregarding Vardi's admission to the assault and battery of the minor.

35.     On information and belief, Defendant Officer Martin participated in unlawful threats and abuse of authority against Plaintiffs under color of law.

## EXCESSIVE FORCE BY DEFENDANT (Individually and in his Official Capacity)
## COUNT I - 42 U.S.C.A. § 1983

36.     Plaintiffs reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

37.     This cause of action is brought pursuant to 42 U.S.C.A. § 1983 and the United States Constitution.

38.     On or before December 21, 2016, Plaintiffs possessed the rights guaranteed by the United States Constitution, including but not limited to the Fourth and Fourteenth Amendment rights against unlawful and unreasonable search, seizure, and excessive force by means of unwarranted threats, and the right to be free from unlawful detention and/or arrest by police officers acting under the color of law.

39.     Plaintiffs would show that at all times material hereto, Defendants Martin had a duty to avoid infliction of unjustified bodily injury to Plaintiffs, to protect their bodily integrity and to not trample on their constitutional rights.

40.     Plaintiffs would show that Defendant Martin failed to act as a reasonable police officer would have acted in the same or similar circumstances.

41.     On December 21, 2016, Defendant Martin, without probable cause, assaulted, illegally seized, detained and/or arrested Plaintiff Jacqueline Craig with reckless disregard of her civil rights, as set forth in detail in Plaintiffs' factual allegations.

42.     On December 21, 2016, Defendant William Martin, without probable cause, assaulted, illegally seized, detained and/or arrested Plaintiff J.H. with reckless disregard of her civil rights, as set forth in detail in Plaintiffs' factual allegations.

43.     On December 21, 2016, Defendant William Martin, without probable cause, assaulted, illegally seized, detained and/or arrested Plaintiff Brea Hymond with reckless disregard of her civil rights, as set forth in detail in Plaintiffs factual allegations.

44.     Plaintiffs are informed and believe and therefore allege that Defendants engaged in the described unlawful acts against Plaintiffs, and facilitated, encouraged and/or instigated such unlawful and unconstitutional acts, and failed to intervene to stop such acts, nor render any

assistance knowing the severity of the injustice being inflicted on Plaintiffs.

45.     At the time of the described wrongful acts by Defendants, Plaintiff Craig was not engaged in any criminal activity to warrant her unreasonable search, seizure, assault, battery or unlawful threats under the color of law made against her.  At the time of the wrongful acts by Defendants, Plaintiff was not displaying any unreasonable behavior to justify being forced onto the ground, assaulted with a stun gun, unreasonably detained, and harassed by Defendant Martin. Moreover, Defendant lacked probable cause, reasonable suspicion or legal justification to detain and/or arrest Plaintiff Craig on any basis.

46.     At the time of the described wrongful acts by Defendants, Plaintiff J.H. was not engaged in criminal activity of a nature to warrant her unreasonable search, seizure, assault, battery or unlawful threats under the color of law made against her.  At the time of the wrongful acts by Defendant, Plaintiff was not displaying any unreasonable behavior to justify being forced onto the ground assaulted by a taser, violently assaulted, and unreasonably detained by Defendant Martin.  Moreover, Defendant lacked probable cause, reasonable suspicion or legal justification to detain and/or arrest Plaintiff K.H. or on any basis.

47.     At the time of the described wrongful acts by Defendants, Plaintiff Hymond was not engaged in criminal activity of a nature to warrant her unreasonable search, seizure, assault, battery or unlawful threats under the color of law made against her.  At the time of the wrongful acts by Defendants, Plaintiff was not displaying any behavior to justify being handcuffed, assaulted, and unreasonably detained by Defendant Martin.   Moreover, Defendant lacked probable cause, reasonable suspicion or legal justification to detain and/or arrest Plaintiff Hymond on any basis.

48.     The unreasonable search and seizure of the Plaintiffs was entirely unjustified by any of the actions of the Plaintiffs, and constituted violations of their civil rights.

49.     The unlawful seizure, detention and/or arrest of Plaintiff Craig was the proximate cause of the damages suffered by Plaintiff Craig, who was not only unreasonably detained for questionable purposes, but was forced to helplessly watch as her daughters were verbally and physically assaulted.

50.     The unlawful seizure, detention and/or arrest of Plaintiff J.H. was the proximate cause of the damages suffered by Plaintiff J.H., who was not only unreasonably detained for questionable purposes, but was also forced to helplessly watch as her sister and mother were verbally and physically assaulted.

51.     The unlawful seizure, detention and/or arrest of the Plaintiff Hymond was the proximate cause of the damages suffered by Plaintiff Hymond, who was not only was unreasonably detained for purposes in violation of her rights under the First Amendment of the United States Constitution, but was also physically assaulted and battered by defendant, Martin during her arrest, and forced under color of law to helplessly watch as her sister and mother were verbally and physically assaulted.

52.     The unlawful assault and battery of Plaintiff K.H. was the proximate cause of the damages suffered by Plaintiff K.H., who was not only physically assaulted by Defendant Martin, but was forced under color of law to helplessly watch as her sister and mother were verbally and physically assaulted.

53.     Witnessing the unlawful seizure, detention and/or arrest of the Plaintiffs was the proximate cause of the emotional distress suffered by Plaintiff A.C., who was forced to

helplessly watch as his mother and sisters were verbally, physically assaulted, and wrongfully arrested. Moreover, the assault and battery by defendant Vardi was the proximate cause of the physical injuries suffered by Plaintiff, A.C.

54.     At the time of the above described wrongful acts by Defendant Martin, Plaintiff Craig was not engaged in criminal activity of a nature to warrant her unreasonable detention and arrest without probable cause and the subsequent unlawful threats made against her and acts of intimidation towards her under the color of law.

55.     At the time of the above described wrongful acts by Defendant, Plaintiff J.H. was not engaged in criminal activity of a nature to warrant her unreasonable detention and arrest without probable cause and the subsequent unlawful threats made against and acts of intimidation towards her under the color of law

56.     At the time of described wrongful acts by Defendant Martin, Plaintiff K.H. was not engaged in criminal activity of a nature to warrant her unreasonable detention and arrest without probable cause and the subsequent unlawful threats made against and acts of intimidation towards her under the color of law.

57.     At the time of described wrongful acts by Defendant, Plaintiff Hymond was not engaged in criminal activity of a nature to warrant her unreasonable detention and arrest without probable cause and the subsequent unlawful threats made against and acts of intimidation towards her under the color of law.

58.     Defendant Martin's actions were not objectively reasonable because he followed a procedure designed to inflict excessive force in restraining individuals in a non-life threatening situation.

59.     Plaintiffs would show that Defendant Martin denied Plaintiffs their right to be free from deprivation of their rights without due process of law, in violation of the Fourth Amendment to the United States Constitution.   Plaintiffs would further show that Defendant Martin was acting within custom, policy, practice and/or procedure of the FWPD at the time of the incident in regards to the use of deadly force as authorized and/or ratified by the Policymakers, specifically, Mayor Price and Chief of Police Fitzgerald.

60.     The force used by Defendant Martin was unnecessary, excessive and unreasonable under the circumstances, as Plaintiffs did not pose an immediate threat to the safety of Defendant Martin or to others, had not committed a crime, and did not require the use of such excessive force.   Defendant Martin embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact, caused Plaintiffs to suffer extreme and severe mental and emotional distress, agony and anxiety.

61.     Defendant Martin acted specifically with the intent to deprive Plaintiffs of the following rights under the United States Constitution:

    a.   Freedom from unreasonable searches;

    b.   Freedom from unreasonable seizures in the form of unlawful detention and/or arrest by police officers;

    c.   Freedom from a deprivation of Liberty without due process of law;

    d.   Freedom from summary punishment;

    e.   Freedom of speech;

    f.   Freedom from threat of harm under color of law;

    g.   Freedom to move about freely as a citizen of the United States of America; and

h.  Access to equal protection under the law.

62.    Defendant Martin subjected Plaintiffs to the above-mentioned deprivations by either actual malice, deliberate indifference, or reckless disregard for their rights under the United States Constitution and the laws of Texas.

63.    Defendant Martin acted at all times knowing that his conduct went against the authorized practices, customs, procedures and policies of Defendant Police Department and was unlawful conduct in violation of the Fourth Amendment and the laws of Texas.   However, Defendant Martin knew that Defendant City, acting through the chief policymaker, would ratify, condone, and acquiesce to his specific acts of intimidation and abusive conduct through unauthorized, yet established practices, customs and procedures and thus did not fear any repercussion from Defendant City in taking the unlawful action against Plaintiffs.

64.    In addition, Defendant City and FWPD, as applicable, failed and refused to implement customs, policies, practices or procedures, and failed to train its personnel adequately on the appropriate policies, practices or procedures regarding the proper use of excessive force. In so doing, Defendant City of Fort Worth knew that it was acting against the clear dictates of current law, and knew that as a direct consequence of their deliberate decisions, the very situation that occurred in all reasonable probability would occur.

65.    The City's failure to properly train and discipline its officers was the proximate cause of the violations of Plaintiffs' constitutional rights.

66.    As a result of these Constitutional violations to Plaintiffs and the injuries they sustained, Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

*Plaintiffs' Original Complaint*

67.     By reason of the mentioned acts and omissions of Defendants, Plaintiffs were caused to incur special damages, including medical expenses and loss of earnings, and general damages in an amount to be proved at trial.

68.     By reason of the mentioned acts and omissions of Defendants, Plaintiffs were required to retain counsel to institute and prosecute this action, and Plaintiffs request payment by Defendants of a reasonable sum as and for attorney's fees pursuant to 42 U.S.C.A. § 1988.

69.     The mentioned acts of Defendants were willful, wanton, malicious and oppressive, thereby justifying the awarding of exemplary and punitive damages as to the individually named Defendants.

## FAILURE TO TRAIN BY THE CITY OF FORT WORTH
## COUNT II - 42 U.S.C. § 1983

70.     Plaintiffs incorporate by reference paragraphs 1 through 69 as if fully set forth herein.

71.     Defendant Martin was acting under color of law and acting pursuant to customs, practices and policies of the City of Fort Worth and the FWPD in regards to the use of excessive force and the wrongful detention of Plaintiffs as authorized and/or ratified by the Policymakers, specifically Mayor Price and Chief of Police Fitzgerald.  Plaintiffs were deprived of rights and privileges secured to them by the Fourth Amendment to the United States Constitution and by other laws of the United States, by the City of Fort Worth failing to provide proper training in the proper use of excessive force, investigatory techniques and wrongful detentions in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

72.     With respect to the claims made the basis of this lawsuit, the City of Fort Worth and the FWPD failed to train adequately its employees regarding the proper use of tasers, excessive force and wrongful detentions.  The failure to train its employees in a relevant respect reflects a deliberate indifference to the City of Fort Worth, FWPD, Mayor Price and Chief of Police Fitzgerald to the rights of the City's inhabitants and is actionable under 42 U.S.C. § 1983.

73.     Defendant the City of Fort Worth, FWPD, and Chief of Police Fitzgerald under the direction of Mayor Price developed and maintained a policy of deficient training of its police force in the use of force, including the proper use of tasers, excessive force and wrongful detentions, freedom of speech and apprehension of individuals.   The City of Fort Worth's training is designed and implemented by Mayor Price and Chief of Police Fitzgerald to act in this regard.

74.     Defendants, the City of Fort Worth, FWPD, Chief of Police Fitzgerald, and Mayor Price's failure to provide adequate training to their police officers regarding the proper use of tasers, excessive or deadly force, freedom of speech and wrongful detentions reflect deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens and made the violations of Plaintiffs' constitutional rights a reasonable probability.

75.     Plaintiffs will show that Defendant Martin's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures for which the City of Fort Worth, FWPD, Chief of Police Fitzgerald, and Mayor Price knew or should have known but never provided the requisite and proper training.  There have been similar incidents with Defendant Martin, which have resulted in excessive force in the use of a Taser weapon

against at least two other African American and other instances of misuse of force.

76.     On information and belief, Defendant the City of Fort Worth, FWPD Chief of Police Fitzgerald and Mayor Price, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Plaintiffs failed to implement and/or enforce the policies, procedures, and practices necessary to provide constitutional equal protections to Plaintiffs.

**UNLAWFUL SEIZURE OF A PERSON**

**42 U.S.C. § 1983**

**COUNT III**

77.     Plaintiffs incorporate by reference paragraphs 1 through 76 as if fully set forth herein.

78.     Fort Worth Police officers, acting under color of law, unlawfully detained Plaintiffs Craig, J.H., K.H., and Hymond without probable cause, or reasonable suspicion that any violation or crime had been committed.   Those actions violated Plaintiffs' rights to due process, equal protection, and give rise to Plaintiffs' claims pursuant to the Fourth Amendment to the Constitution of the United States and 42. U.S.C. § 1983, and their counterparts in the Texas Constitution.

79.     The City of Fort Worth violated Plaintiffs' constitutional rights to due process, equal protection, and not to be detained without probable cause or reasonable suspicion when the Defendants arrested and wrongfully detained Plaintiffs.   Plaintiffs were placed in handcuffs and arrested, despite not committing a penal offense or being suspected of committing a crime, and despite the circumstance that Plaintiffs were the victims who called FWPD for assistance from

the onset.

80.     Plaintiffs did not pose an immediate threat to the safety of the defendants or others.  Plaintiffs were not actively resisting arrest or attempting to evade arrest by flight.  The officer's conduct was objectively unreasonable, resulted from a lack of training, and comported with the City of Fort Worth' illegal de facto policies.

81.     As a result, Plaintiffs suffered injuries, which resulted directly from their wrongful detention, and/or seizure that was objectively unreasonable and violation of clearly established law.

## BATTERY *(Against Itamar Vardi)*
## COUNT III

82.     Plaintiffs incorporate by reference paragraphs 1 through 81 as if fully set forth herein.

83.     As stated in the facts above, Defendant Vardi harmfully and offensively grabbed Plaintiff Craig's minor son A.C. about the neck causing him injury.

84.     The nature of his touching- grabbing and squeezing the minor about his arm and neck- was harmful and offensive and Vardi had reason to know that this contact was harmful and offensive.

85.     Vardi continued the offensive contact with the minor despite his pleas for help and those of his minor sister.

86.     Plaintiff Craig demands damages in an amount to be determined at trial.

**ASSAULT** *(Against Itamar Vardi)*

**COUNT IV**

87.     Plaintiffs incorporate by reference paragraphs 1 through 86 as if fully set forth herein.

88.     As stated in the facts above, Defendant Vardi harmfully and offensively grabbed Plaintiff Craig's minor son A.C. about the neck causing him injury.

89.     The direct and immediate touching- grabbing and squeezing the minor about his arm and neck- was harmful and offensive and Vardi had reason to know that this contact was harmful and offensive.

90.     Defendant Vardi continued the offensive contact with the minor despite his pleas for help and those of his minor sister, placed Plaintiff Craig's minor son in fear of threatening, harmful and offensive contact.

91.     Plaintiffs did not consent to the imminent touching and experienced apprehension from Defendant Vardi's actions.

92.     Plaintiff Craig demands damages in an amount to be determined at trial.

**DAMAGES**

93.     Plaintiffs incorporate by reference paragraphs 1 through 92 as if fully set forth herein.   Defendants' acts and/or omissions were a proximate cause of the following Injuries suffered by Plaintiffs:

     a.   Actual damages;

b.  Punitive and exemplary damages against Defendants Martin and Vardi sued in their individual capacities in an amount sufficient to deter and to make an example of each such Defendants;

c.  Pain and suffering;

d.  Mental anguish and emotional distress suffered by Plaintiffs;

e.   Medical expenses;

f.  Pre- and post-judgment interest;

g.  Attorney's fees and costs of suit; and

h.  Such other and further relief as this Honorable Court deems just and proper.

## BYSTANDER INJURY – ALL DEFENDANTS

## COUNT IV

94.     Minors, A.C., by and through Plaintiff, incorporate by reference paragraphs l through 93 as if fully set out herein.

95.     A.C. was forced to watch Defendant Officer Martin verbally assault and physically assault his mother and sisters.  A.C. also witnessed his mother being forced to the ground, straddled, and threatened with a taser by defendant, Martin, acting under the color of law.  Witnessing the unlawful seizure, detention and/or arrest of the Plaintiffs was the proximate cause of the emotional distress suffered by Plaintiffs A.C. who was forced to helplessly watch as his mother and sisters were verbally, physically assaulted, and wrongfully arrested.

96.     As a direct and proximate result of witnessing this traumatic event, A.C. seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## PUNITIVE/EXEMPLARY DAMAGES

97.     Plaintiffs incorporate by reference paragraphs 1 through 96 as if fully set forth herein.  Additionally and in the alternative, the conduct of Defendant Martin and Vardi was done with malice.  As such, Plaintiffs request punitive and exemplary damages to deter this type of conduct in the future.  Rights, safety and welfare is more than momentary thoughtlessness and inadvertence; such unconscionable conduct goes beyond ordinary negligence, and as such, Plaintiffs request punitive and exemplary damages be awarded against Defendants Martin and Vardi in a sum which is within the jurisdictional limits of this court.

## COSTS AND ATTORNEY FEES

98.     Plaintiffs incorporate by reference paragraphs 1 through 97 as if fully set forth herein.  Plaintiffs are entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).  As such, Plaintiffs request the Court to award costs and attorney's fees incurred in Plaintiffs' prosecution of this litigation.

## CONDITIONS PRECEDENT

99.     Plaintiffs reserve their rights to plead and prove the damages to which they are entitled to at the time of trial. All conditions to Plaintiffs' recovery have been performed or have occurred.

## TRIAL BY JURY

100.    Plaintiffs have paid a jury fee and demand a trial by jury.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiffs have and recovers judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest

on said judgment at the legal rate; costs of court; and such other and further relief, both general

and special, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,


By:  /s/ S. Lee Merritt_____
S. LEE MERRITT
State Bar No. PA 314891
**MERRITT LAW FIRM, LLC**
1910 Pacific Ave., Suite 11500
Dallas, TX. 75021
888-647-3041
888-339-2050 -fax
slm@merrittatlaw.com


By: /s/ Daryl K. Washington_____
State Bar No. 24013714
**WASHINGTON LAW FIRM, P.C.**
325 N. St. Paul St., Suite 3950
Dallas, Texas 75201
214-880-4883
214-751-6685 -fax
dwashington@dwashlawfirm.com

**ATTORNEYS FOR PLAINTIFFS**