
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 1 7 2018

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JACQUELINE CRAIG, INDIVIDUALLY        §
AND ON BEHALF OF MINORS J.H.,         §
K.H., AND A.C., ET AL.,               §
                                      §
            Plaintiffs,               §
                                      §
VS.                                   §    NO. 4:17-CV-1020-A
                                      §
CITY OF FORT WORTH, TEXAS,            §
ET AL.,                               §
                                      §
            Defendants.               §

MEMORANDUM OPINION
and
ORDER

Before the court for consideration and decision is the
motion of defendant William D. Martin ("Martin"), to dismiss the
claims asserted against him by plaintiffs, Jacqueline Craig
("Craig"), Brea Hymond ("Hymond"), and J.H., K.H., and A.C., each
a minor acting by and through Craig as his/her next friend.
Having considered the motion, the response of plaintiffs,
Martin's reply, plaintiffs' sur-reply, the record, and the
applicable legal authorities, the court finds that the motion
should be granted in part and denied in part.

I.

Plaintiff's Complaint

Plaintiffs initiated this action by the filing of a
complaint on December 22, 2017, against City of Fort Worth, Texas
("City"), Martin, and Itamar Vardi ("Vardi"). An abbreviated

version of its allegations as they pertain to Martin are set forth below:

On December 21, 2016, A.C., the minor son of Craig, suffered an injury as a result of Vardi having grabbed him by the back of the neck and pushing him to the ground because A.C. had dropped raisins near Vardi's home. L.C., who was with A.C., alerted her mother, Craig.

Upon learning of her son's assault, Craig left her home to approach Vardi. Vardi admitted to assaulting A.C. after A.C. refused to pick up raisins he dropped on the walkway near Vardi's home. Id. Craig called law enforcement to report the assault, then waited, along with several members of her household, for the police to arrive. Id. At some point in time, Hymond began recording what was happening.

Martin, an officer of City's police department, arrived to the location of the incident. He briefly spoke with Vardi, who admitted to grabbing A.C. He then spoke to Craig, whom he had learned before he arrived had outstanding misdemeanor warrants. Plaintiffs' precise descriptions of the conduct of Martin about which they complain are that:

> 20. Defendant Martin then turned his attention to Craig who explained that Vardi had assaulted her son. To that, Martin responded, "Why don't you teach your son not to litter?" Plaintiff Craig answered that even if he did litter that did not give a stranger the right to grab or choke her son. Martin responded "Why not?"

2

Craig, upset by this response, stated, "Because it doesn't!" Defendant Martin informed Craig that if she continued to yell at him she would "piss [him] off and then [he would] take [her] to jail."

21. Following this statement, fifteen-year-old J.H. turned to her mother with her back to Martin and attempted to end the encounter. Without any explanation or justification, Defendant Martin grabbed J.H. from behind and shoved her to the side. Defendant Martin then grabbed Plaintiff Craig and threw her to the ground, drawing his Taser gun and shoving it into her back while she lay prostrate on the ground.

22. Defendant Martin then violently grabbed Plaintiff Craig's right arm and pulled it behind her back while pointing the Taser gun at K.H.[1] and instructing her to get down on the ground. As J.H. complied, Martin placed Craig in handcuffs while she lay face down in the street. He then approached J.H., who was lying on the ground as instructed, and straddled the top of her while grabbing the back of her neck and forcing her head to the concrete. Without any explanation or justification, Defendant Officer Martin placed J.H. in handcuffs and lifted her from the ground by yanking her arms.

23. Defendant Martin then walked Craig and J.H. to his squad car. Without any justification or explanation, Defendant Martin placed J.H. in the back of his car, where she had difficulty maneuvering into the vehicle with her hands cuffed behind her back. Defendant Martin grew impatient and shouted "Get in the car!" while kicking J.H.'s legs into the vehicle and slamming the door. Defendant Martin also placed Craig in the vehicle on the opposite side of J.H.

24. Plaintiff, K.H., witnessing the assault on her mother and sister, attempted to intervene by placing herself in the path of defendant, Martin in an attempt to block him from any further assault on members of her

---

[1]The court assumes that the "K.H." at this point is intended to be "J.H."

family. Defendant, Martin, in turn unlawfully struck then fourteen year-old plaintiff, K.H., in the throat.

. . . .

26. Defendant Martin then, suddenly and without provocation, rushed Plaintiff Brea Hymond, who stood at a safe distance, recording the arrest. Martin handcuffed Hymond's arms behind her back and questioned her about her age. When she failed to respond suitably, Martin hyper-extended her handcuffed arms by flexing them above her head in a pain-compliance maneuver, which he later described as consistent with the training and procedures he learned at the Fort Worth Police Academy. When other officers arrived, Plaintiff Hymond was placed in the back of a police vehicle.

27. Plaintiffs Craig, Hymond and J.H. were taken into police custody. Plaintiff, Craig was charged with failure to ID - fugitive from justice (although she is heard providing proper ID in the recordings available) and resisting arrest (despite the lack of evidence that she resisted at any time). Plaintiff Hymond was unlawfully charged with interference with a peace officer and resisting arrest for her actions in recording the attack. K.H. was transferred to a juvenile detention center where she was later released without being charged with any crime.

. . . .

33. Defendant, Martin, refused to provide Plaintiffs with any explanation for their unlawful detention, and although unlawfully detained, Plaintiff J.H. was never charged.

34. On information and belief, Defendant Martin, the City and its policymaker acted with deliberate indifference and/or reckless disregard toward Plaintiffs' rights, targeting them for unlawful search and seizure, unlawful assault, and unlawful detention without any reasonable factual basis to support that Plaintiffs had committed any crime in responding to an adult male attack on their minor family member. Moreover, Defendant Martin failed to adequately

4

investigate the assault of minor plaintiff, A.C., by defendant, Vardi, disregarding Vardi's admission to the assault and battery of the minor.

35. On information and belief, Defendant Officer Martin participated in unlawful threats and abuse of authority against Plaintiffs under color of law.

Doc. 1 at 7-9, 10, ¶¶ 20-24, 26-27, 33-35.[2]

Based on those alleged facts, plaintiffs brought claims against Martin for use of excessive force and unlawful seizure.[3]

II.

Grounds of the Motion

Martin contends that plaintiffs failed to state a claim because (1) the arrests of Craig, J.H., K.H., and Hymond were constitutional, (2) plaintiffs failed to allege sufficient injury as to the excessive force claims of Craig, J.H., and K.H. and Hymond, and (3) A.C. asserts no cognizable bystander claim as to Martin. Martin further contends that the facts alleged do not overcome his qualified immunity.

---

[2]The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in this Case No. 4:17-CV-1020-A.

[3]In addition to suing Martin individually, plaintiff named him as a defendant in his official capacity. The court is not devoting attention to the official capacity claim in this memorandum opinion and order because it is to be interpreted as nothing more than a claim against City. See Kentucky v. Graham, 473 U.S. 159, 165 (1985); Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978).

III.

## Pleading Standards

A.   Rule 8(a)(2)

Rule 8(a)(2) of the Federal Rules of Civil Procedure
provides, in a general way, the applicable standard of pleading.
It requires that a complaint contain "a short and plain statement
of the claim showing that the pleader is entitled to relief,"
Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair
notice of what the claim is and the grounds upon which it rests,"
Bell Atl. Corp. v. Twombly, 550 U.S. at 544, 555 (2007)(internal
quotation marks and ellipsis omitted).  Although a complaint need
not contain detailed factual allegations, the "showing"
contemplated by Rule 8 requires the plaintiff to do more than
simply allege legal conclusions or recite the elements of a cause
of action.  Id. at 555 & n.3.  Thus, while a court must accept
all of the factual allegations in the complaint as true, it need
not credit bare legal conclusions that are unsupported by any
factual underpinnings.  See Ashcroft v. Iqbal, 556 U.S. 662, 679
(2009)("While legal conclusions can provide the framework of a
complaint, they must be supported by factual allegations.")

Moreover, to survive a motion to dismiss for failure to
state a claim under Rule 12(b)(6), the facts pleaded must allow
the court to infer that the plaintiff's right to relief is

plausible. Id. at 678. To allege a plausible right to relief,
the facts pleaded must suggest liability; allegations that are
merely consistent with unlawful conduct are insufficient.
Twombly, 550 U.S. at 566-69. "Determining whether a complaint
states a plausible claim for relief . . . [is] a context-specific
task that requires the reviewing court to draw on its judicial
experience and common sense." Iqbal, 556 U.S. at 679.

B.  Qualified Immunity

Martin contends that plaintiffs have not pleaded sufficient
facts to overcome his qualified immunity.

Qualified immunity insulates a government official from
liability for civil damages when the official's actions do not
"violate clearly established statutory or constitutional rights
of which a reasonable person would have known." Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982). For a right to be "clearly
established," the right's contours must be "sufficiently clear
that a reasonable official would understand that what he is doing
violates that right." Anderson v. Creighton, 483 U.S. 635, 640
(1987). Individual liability thus turns on the objective legal
reasonableness of the defendant's actions assessed in light of
clearly established law at the time. Hunter v. Bryant, 502 U.S.
224, 228 (1991); Anderson, 483 U.S. at 639-40. In Harlow, the
court explained that a key question is "whether that law was

7

clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. Elder v. Holloway, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992). "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. Siegert v. Gilley, 500 U.S. 226, 231 (1991); Duckett v. City of Cedar Park, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a valid claim, i.e., asserted a violation of a constitutional

8

right. Siegert, 500 U.S. at 232. Rather, the court must be

certain that, if the facts alleged by plaintiff are true, a

violation has clearly occurred. Connelly v. Comptroller, 876

F.2d 1209, 1212 (5th Cir. 1989). A mistake in judgment does not

cause an officer to lose his qualified immunity defense. In

Hunter, the Supreme Court explained:

> The qualified immunity standard "gives ample room for
> mistaken judgments" by protecting "all but the plainly
> incompetent or those who knowingly violate the law."
> Malley, [475 U.S.] at 343. . . . This accommodation
> for reasonable error exists because "officials should
> not err always on the side of caution" because they
> fear being sued. . . .

502 U.S. at 229.

When a defendant relies on qualified immunity, the burden is

on the plaintiff to negate the defense. Kovacic v. Villarreal,

628 F.3d 209, 211 (5th Cir. 2010); Foster v. City of Lake

Jackson, 28 F.3d 425, 428 (5th Cir. 1994). At the motion-to-

dismiss stage, "a plaintiff seeking to overcome qualified

immunity must plead specific facts that both allow the court to

draw the reasonable inference that the defendant is liable for

the harm he has alleged and that defeat a qualified immunity

defense with equal specificity." Backe v. LeBlanc, 691 F.3d 645,

648 (5th Cir. 2012).

IV.

## Analysis

Martin asserts that he is entitled to qualified immunity on plaintiffs' claims. Thus, the burden falls on each plaintiff to show that he/she has alleged facts that, if true, would prove that Martin violated a clearly established statutory or constitutional right of plaintiffs, and that Martin took action that was objectively unreasonable. See Harlow, 457 U.S. at 818; Kovacic, 628 F.3d at 211. Plaintiffs' claims against Martin are based on an asserted violation of plaintiffs' right to be free from excessive force ("Count I") and unlawful seizure ("Count III"). Plaintiffs also assert a bystander injury claim against Martin for the alleged emotional harm to A.C. as a result of the events giving rise to this action (the "Count IV" on page 22 of the complaint).[4]

1. Unlawful Seizure Claims by Craig, J.H., K.H., and Hymond

The above-described allegations are plaintiffs' pleaded version of the events that led to Craig and J.H. being taken into police custody. Craig was charged with "failure to ID - fugitive from justice." Doc. 1 at 8, ¶ 27. Hymond was charged with

---

[4]The complaint has two "Count IV" headings. The "Bystander Injury" Count IV is on page 22 of the complaint.

interference with a police officer and resisting arrest. Id. at 9. The complaint does not say the charge for which J.H. was arrested. Id. at 9, ¶ 27. K.H., although not arrested, was taken to a juvenile detention center, from which she was released without being charged. Plaintiffs alleged these arrests were in violation of their Fourth Amendment right to be free from unlawful seizure "despite not committing a penal offense or being suspected of committing a crime." Id. at 19, ¶ 79.

Government officials are protected from charges of wrongful arrest where a reasonable official would believe probable cause existed, Brown v. Lyford, 243 F.3d 185 (5th Cir. 2001), and an officer is entitled to qualified immunity for a claim of wrongful arrest unless the officer lacked probable cause, Eugene v. Alief Indep. Sch. Dist., 65 F.3d 1299, 1305 (5th Cir. 1995). The Supreme Court has defined probable cause as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution" to believe that the suspect has committed an offense, Michigan v. DeFillippo, 443 U.S. 31, 37 (1979), and probable cause requires a "fair probability" that a defendant engaged in criminal activity, United States v. Garcia, 179 F.3d 265, 268-69. A "fair probability" must be "something more than a bare suspicion, but need not reach the fifty percent mark." Id. at 269.

The court analyzes the "totality of the circumstances" when determining whether such "fair probability" existed. <u>United States v. Antone</u>, 753 F.2d 1301, 1304 (5th Cir. 1985). "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted--indeed, for every suspect released." <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." <u>Devenpeck v. Alford</u>, 543 U.S. 146, 152 (2004). Probable cause need not "be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest." <u>Id.</u> at 153. Finally, "[w]hen an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest." <u>Thomas v. Sams</u>, 734 F.2d 185, 191 (5th Cir. 1984)(citing <u>Rodriguez v. Ritchey</u>, 556 F.2d 1185 (5th Cir. 1977)(en banc)).

Applying the standards above, and accepting plaintiffs' factual allegations as true, the court has determined that Martin is entitled to qualified immunity on plaintiffs' claims of unlawful arrest.

Plaintiffs' complaint makes clear that Martin was aware of Craig's outstanding warrants at the time he arrived on the scene

of the disturbance. <u>See</u> Doc. 1 at 6 & 8, ¶¶ 19 & 27. Based on this fact alone, Martin had cause for arresting Craig and is therefore entitled to qualified immunity on such claim. <u>Davenpeck</u>, 543 U.S. at 153 ("[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. . . . [H]is subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.").

Plaintiffs' recount of the incident also makes clear that Martin had probable cause to arrest J.H. and K.H. for interfering with Martin's performance of his job duties, whether that is what they were charged with or if they were even arrested at all.[5]

Section 38.15 of the Texas Penal Code makes it a crime to interrupt, disrupt, impede, or otherwise interfere with a police officer "performing a duty or exercising authority imposed or granted by law." Plaintiffs admit in their complaint that (1) while Martin and Craig were arguing, "J.H. turned to her mother with her back to Martin and attempted to end the encounter," Doc. 1 at 7, ¶ 21, (2) after witnessing the arrest of Craig and J.H., K.H. "attempted to intervene by placing herself in the path of [Martin]," <u>id.</u> at 8, ¶ 24, and (3) Hymond, standing "at a safe

---

[5] As noted above, the pleadings do not establish that K.H. was arrested, but rather that she was taken to a juvenile detention center.

distance away" from these events, recorded them on her cellular device, id., ¶¶ 25-26.

Martin was dispatched to the scene of a disturbance call. Before his arrival, he learned that one of the persons at the scene, Craig, had outstanding arrest warrants. Martin began questioning Craig when he arrived at the scene. Plaintiffs' describe the conversation in such a way as to indicate the discussion was tense. Martin cautioned Craig that if she continued to yell at him he would arrest her. This is when J.H. attempted to interfere with Martin's interview of Craig by physically placing herself between them. Based on these facts, a reasonable officer could have believed that J.H. was "interrupting, disrupting, impeding, or otherwise interfering with a police officer performing a duty or exercising authority imposed or granted by law," Tex. Penal Code Ann. § 38.15, because she immediately placed herself between the officer and an individual the officer had just stated he might arrest, see Haggerty v. Texas Southern Univ., 391 F.3d 653, 656-58 (5th Cir. 2004) (officer could have reasonably believed that school official who did not come within 10-15 feet of officer and student he was arresting was interfering with performance of officer's duties); see also Pearlman v. City of Fort Worth, Tex., 400 F. App'x 956

(5th Cir. 2010)(officer had probable cause to arrest individual who physically intervened during arrest of another).

The same reasoning supports the conclusion that Martin had probable cause to arrest K.H.[6] The complaint describes that soon, if not immediately, after the above-described events, K.H. "attempted to intervene by placing herself in the path of defendant." Doc. 1 at 8, ¶ 24.

Finally, regarding Hymond, plaintiffs alleged that Hymond "was unlawfully charged with interference with a peace officer and resisting arrest for her actions in recording the attack." Id. at 9, ¶ 27. Martin could have reasonably believed that Hymond's act of video recording Martin as he performed his official duties was an interference with such duties. See Turner v. Lieutenant Driver, 848 F.3d 678, 687-88 (5th Cir. 2017)(holding that prior to the Turner opinion, a person's First Amendment right to record police, subject to reasonable time, place, and manner restrictions, was not a clearly established right).

---

[6]As explained earlier, plaintiffs never actually allege in their complaint that K.H. was arrested. They instead state that at some point after she was struck in the throat by Martin, K.H. was transferred to a juvenile detention center. Based on these allegations, K.H. was, at minimum, detained.

2. <u>Excessive Force Claims by Craig, J.H., K.H., and Hymond</u>

Claims for excessive force in the context of an arrest are analyzed under the "objective reasonableness" standard. <u>Graham v. Connor</u>, 490 U.S. 386, 388, 395 (1989). To state a claim for excessive force, plaintiffs must allege facts that can show "(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable." <u>Glenn v. City of Tyler</u>, 242 F.3d 307, 314 (5th Cir. 2001) (internal citations and quotations omitted). Determining whether an officer used excessive force "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396 (citing <u>Tennessee v. Garner</u>, 471 U.S. 1, 8-9 (1985)). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, allowing for the fact that officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly

evolving—about the amount of force that is necessary in a particular situation. <u>Graham</u>, 490 U.S. at 396-98.

Martin's primary argument supporting his qualified immunity defense as to the excessive force claims is that with respect to each defendant he used only minimal force resulting in "de minimis" injury or no injury at all. Doc. 21 at 13, 16-19, Regarding the amount of damages necessary to sustain an excessive force case, the Fifth Circuit has recently stated

> Although a <u>de minimis</u> injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances. Any force found to be objectively unreasonable necessarily exceeds the <u>de minimis</u> threshold, and, conversely, objectively reasonable force will result in <u>de minimis</u> injuries only. Consequently, only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment. In short, as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force.

<u>Alexander v. City of Round Rock</u>, 854 F.3d 298, 309 (5th Cir. 2017)(internal quotation marks, brackets, citations, and emphasis omitted). Thus, the appropriate inquiry for the court in determining whether Martin is entitled to qualified immunity on plaintiffs' excessive force claims at this stage is whether Martin used excessive force. <u>Id.</u> Based on plaintiffs'

17

allegations in their complaint, and the rest of the record, the court is unable to find at this time that Martin is entitled to qualified immunity on such claims.

At the time of the alleged events giving rise this action, the law was clearly established that the amount of force that Martin could use "depend[ed] on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." Bush v. Strain, 513 F.3d 492, 502 (5th Cir. 2008); Goodson v. City of Corpus Christi, 202 F.3d 730, 740 (5th Cir. 2000).

Accepting plaintiffs' pleaded version of the facts as true: This case involved a situation where Martin was called to the scene of a disturbance. Prior to arrival, he learned that one of the persons present at the scene, Craig, was wanted on warrants. After a verbal exchange with Craig, he informed her she might be arrested. After Craig's daughter, J.H., stepped between Martin and Craig, he threw Craig to the ground, shoved a taser into her back, and arrested her. He straddled J.H., pushed her face into the concrete, handcuffed her, and then lifted her by her arms. Those events caused plaintiffs "to suffer extreme and severe mental and emotional distress, agony and anxiety." Doc. 1 at 15,

¶ 60.   When K.H. attempted to place herself in the path of Martin and K.H.'s family members who remained at the scene, Martin punched K.H. in the throat.  Id. at 8, ¶ 24.  Finally, Martin rushed Hymond, who "stood a safe distance away," handcuffed her, and performed a "pain-compliance" maneuver in order to force her compliance in answering questions.  Id. at 8, ¶ 26.

Because of those allegations, the court cannot conclude that Martin has demonstrated that he is entitled to qualified immunity on the § 1983 excessive force claims.  A different conclusion might well be reached on the basis of a more complete record.

   3.   Bystander Claim by A.C.

Plaintiff's claim for bystander injury to A.C., doc. 1 at 22, ¶¶ 94-96, must be dismissed for failure to state a claim. Plaintiffs failed to state in their complaint under what legal theory such claim is brought.  If such claim is brought pursuant to § 1983, it is not cognizable.  Grandstaff v. City of Borger, 767 F.2d 161, 172 (5th Cir. 1985).  If such claim was intended to be brought pursuant to Texas law, it fails because plaintiffs have asserted the same claim against Martin's employer, the City of Fort Worth.  See Tex. Civ. Prac. & Rem. Code § 101.106(f); see also Nealon v. Williams, 332 S.W.3d 364, 365 (Tex. 2011).

## 4. Punitive/Exemplary Damages

To whatever extent plaintiffs' Punitive/Exemplary Damages claim is asserted against Martin based on plaintiffs' unlawful seizure and bystander claims against Martin, the Punitive/Exemplary Damages claim is without merit and is extinguished by the dismissal of the unlawful seizure and bystander claims against Martin.

* * * * *

In the last section of plaintiffs' response is a request that, if the court determines that Martin's motion should be granted, the court give plaintiffs leave to amend their complaint. Doc. 19 at 17. There is no suggestion as to what an amended complaint would add. Nothing in the title of the responsive document discloses that any such request is contained therein. Thus, plaintiff's request is made in violation of Rule LR 5.1(c) of the Local Civil Rules of this court, which requires that any filed document "must clearly identify each included pleading, motion, or other paper in its title." Moreover, plaintiffs have had ample opportunity to properly seek to amend their complaint to meet the grounds of Martin's motion to dismiss. If plaintiffs had further facts to allege, presumably they would have put them in a proposed amended complaint

accompanied by a properly filed motion for leave to amend.  <u>See</u>
Rule LR 15.1 of the Local Civil Rules of this court.

V.

Order

Therefore,

The court ORDERS that the motion to dismiss of Martin be,
and is hereby, granted in part and denied in part, and that
plaintiffs' Count III claim for Unlawful Seizure of a Person and
Count IV claim for Bystander Injury as against Martin be, and are
hereby, dismissed.[7]

SIGNED May 17, 2018.

JOHN McBRYDE
United States District Judge

---

[7]The complaint contains two Counts III and two Counts IV.  The dismissed Counts as to Martin
are the Count III, titled "Unlawful Seizure of a Person, 42 U.S.C. § 1983," that appears on pages 19-20
of the complaint and the Count IV titled "Bystander Injury - All Defendants," that appears on pages 22-
23 of the complaint.